# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| KEITH HOBBS, individually and on behalf of others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : |
| Plaintiff, | : <br> : |
| v. | : **COMPLAINT – CLASS ACTION** <br> : |
| APOLLO INTERACTIVE, INC. | : <br> : **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : <br> : / |

## Preliminary Statement

1.      Plaintiff Keith Hobbs ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The Plaintiff alleges that Apollo Interactive, Inc. ("Apollo") made automated telemarketing calls to Plaintiff and other putative class members without their prior express written consent.

3. Also in violation of the TCPA, Apollo failed to maintain procedures to maintain an internal do not call list; specifically it failed to properly identify itself in the telemarketing calls to Mr. Hobbs.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Apollo.

5. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Keith Hobbs currently resides in this District.

7. Defendant Apollo Interactive, Inc. is a California corporation with its principal place of business in El Segundo, CA and a registered agent of David Bohline, 139 Illinois St., El Segundo, CA 90245.

**Jurisdiction & Venue**

8. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate,

exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in damages for each violation of the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the Defendant because it engages in nationwide telemarketing conduct, including making telephone calls to Plaintiff in this District which form the factual basis of Plaintiff's claims.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District.

**TCPA Background**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones**

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing… can be an intrusive invasion of privacy[,]… consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers[,],… [e]vidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[,]… [and that] [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."

15. In enacting the TCPA, Congress gave the Federal Communications Commission ("FCC") the power to prescribe regulations to implement the TCPA.

16. In 2013, the FCC prescribed a regulation requiring prior express written consent for all autodialed or prerecorded calls ("robocalls") which include or introduce and advertisement *or* which constitutes telemarketing to wireless numbers. Specifically, it required:

> "[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. §§ 64.1200(a)(2) and (f)(8).

**The TCPA's Requirement that Companies Properly Identify Themselves**

17. The TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the

5

entity. 47 C.F.R. 64.1200(d).  Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

18. This includes the requirement that, "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. 64.1200(d)(4).

**The Growing Problem of Automated Calls**

19. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

20. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

21. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years:

- "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." FCC Chairman Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016) (https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls).

- "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016) (https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf ).

- In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. *FTC Releases FY 2017 National Do Not Call Registry Data* (December 18, 2017) (https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc).

- In May of 2018 the New York Times reported extensively on the surging number of robocall complaints filed by consumers with the FTC and overall widespread consumer outrage as to the prevalence of illegal telemarketing despite existing law. *See Yes, It's Bad. Robocalls, and Their Scams, Are Surging. Tara Siegel Bernard. https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html*.

- In April of 2019, YouMail, Inc., a provider of cloud-based telecommunication services calculated that Americans suffered an all-time high of 5.23 billion robocalls in March of 2019, setting a new monthly record. This volume equaled 168.8 robocalls per day in March, and 1,953 robocalls per second. *5.23 Billion Robocalls Set Record in March, According to YouMail Robocall Index*. https://www.prnewswire.com/news-releases/5-23-billion-robocalls-set-record-in-march-according-to-youmail-robocall-index-300824631.html.

**Factual Allegations**

22.    Apollo provides lead generation services to a variety of insurance companies.

7

23. One of the telemarketing strategies used by Defendant involves the use of automated calls to solicit potential customers.

24. While such technology may save time and money for the Defendant's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

**Calls to The Plaintiff**

25. Plaintiff Hobbs is a natural person.

26. Mr. Hobbs's telephone number, (706) 761-XXXX, is assigned to a cellular telephone service.

27. Mr. Hobbs's number is also on the National Do Not Call Registry.

28. Mr. Hobbs was called by Apollo Interactive, or an agent acting on its behalf, on August 29, 2018.

29. When Mr. Hobbs answered the call, there was a distinctive click and a pause.

30. This click and pause is a telltale sign of an automatic telephone dialing system which attempts to connect a call to an agent when it senses a person has answered the call.

31. The click and pause signifies the algorithm of the dialer dialing thousands of numbers at once and only transferring the call to a live agent once a human being is on the line.

32. As a result, the telemarketing activity shifts the burden of wasted time to call recipients, results in dead air and abandoned calls, and an increased nuisance and invasion of privacy in the call recipient.

33. The Defendant's dialer is an ATDS as that term is defined by the TCPA.

34. Furthermore, despite Apollo being a California company, the Caller ID for the telemarketing call was (706) 729-1504, a local number.

35. The fact that the Caller ID was manipulated ("spoofed") in order to appear like the call was local, so the called parties would be more likely to answer, is a further indication that an ATDS was used, as it takes an automated computer dialing program to change a Caller ID.

36. To identify the calling party, who could not be identified from the manipulated Caller ID, Mr. Hobbs listened to the sales pitch as the company calling was not properly identified during the call.

37. After the initial call concluded, the Plaintiff received an automated text and an e-mail from the Defendant with instructions of how to obtain a quote for the purpose of purchasing insurance.

38. The automated text message call did not provide the Plaintiff with the name of the individual caller, nor did it provide the name of the person or entity on whose behalf the call is being made.

39. Mr. Hobbs is not a customer of Defendant and has not consented to receive telemarketing calls prior to the receipt of these calls.

40. The Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the telephone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.  They also suffered an informational injury in the form of the deprivation of information helpful in facilitating do not call requests as well as determining if a request had previously been made to the seller or telemarketer at the time of the call.

**Class Action Allegations**

41. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

42. The Class of persons Plaintiff proposes to represent is tentatively defined as:

Class 1

> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency

telephone calls; (b) to their cellular telephone number; (c) using the telephone system(s) used in calling Plaintiff's cellular telephone number; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

CLASS 2

All natural persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

43. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

44. The Class as defined above is identifiable through phone records and phone number databases.

45. The potential Class members number at least in the thousands. Individual joinder of these persons is impracticable.

46. The Plaintiff is a member of the Class.

47. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether the Defendant had established and properly implemented adequate policies and procedures to properly identify itself on telemarketing calls;

11

    b. Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

    c. Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

    d. Whether the Plaintiff and the class members are entitled to damages in the amounts liquidated by the TCPA because of Defendant' actions.

48. The Plaintiff's claims are typical of the claims of class members.

49. The Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

51. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Violation of the TCPA's Automated Call provisions
### (On behalf of Plaintiff and Class 1)

53. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. The Defendant violated the TCPA by (a) initiating telephone calls using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service without the prior express consent of the called party. *See* 47 C.F.R. § 64.1200(a)(1);

55. The Defendant violated the TCPA by (a) initiating telephone calls which constitute telemarketing using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service without the prior express written consent of the called party. *See* 47 C.F.R. § 64.1200(a)(2);

56. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

57. The Defendant's violations were willful and/or knowing.

58. Under the TCPA, the Plaintiff is entitled to injunctive relief. The Plaintiff seeks injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system.

59. In addition, plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(b)(3).

60. Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

## Legal Claims
### Violation of the TCPA's DNC provisions
(On behalf of Plaintiff and Class 2)

61. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62. The foregoing acts and omissions of the Defendants constitute violations of the FCC's regulation implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do want to receive calls made by or on behalf of such person or entity. 47 C.F.R. 64.1200(d).

63. This includes the requirement that, "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being

14

made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. 64.1200(d)(4).

64. The Defendant, or its agent, failed to properly identify the individual caller of the Defendant in the first voice call to the Plaintiff.

65. The Defendant, or its agent, also failed to identify itself in the telemarketing text call to the Plaintiff.

66. The Defendant's violations were willful and/or knowing.

67. Under the TCPA, the Plaintiff is entitled to injunctive relief. The Plaintiff seeks injunctive relief prohibiting Defendant from making telemarketing calls until it establishes adequate procedures in place to ensure they are identified on each telemarketing call made.

68. In addition, plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(c)(5).

69. Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system, absent an emergency and

injunctive relief prohibiting Defendant from making telemarketing calls until it establishes adequate procedures in place to ensure they are identified on each telemarketing call made;

C. Because of Defendant's violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) and (c)(5).

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: April 8, 2019               PLAINTIFF, individually and
                                   on behalf of others similarly situated,

          By:                      **SKAAR & FEAGLE, LLP**

                                   <u>/s/ Justin T. Holcombe</u>
                                   Justin T. Holcombe
                                   Georgia Bar No. 552100
                                   jholcombe@skaarandfeagle.com
                                   Kris Skaar
                                   Georgia Bar No. 649610

kskaar@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel:   (770) 427-5600
Fax:   (404) 601-1855

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
Cliff R. Dorsen
Georgia Bar No. 149254
cdorsen@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Tel:   (404) 373-1970
Fax:   (404) 601-1855


**PARONICH LAW, P.C.**

Anthony Paronich
*Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel:   (617) 485-0018
Fax:   (508) 318-8100

17