## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | |
|---|---|
| KEITH HOBBS, individually and on behalf of others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>APOLLO INTERACTIVE, INC.,<br><br>               Defendant. | Case No. 4:19-cv-00057-CDL<br><br><br>JURY TRIAL DEMANDED |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

COMES NOW, Defendant Apollo Interactive, Inc. ("Apollo" or "Defendant"), by and through its undersigned counsel, and hereby files this memorandum of law in support of its Motion to Dismiss or, Alternatively, Motion to Compel Arbitration and Stay Proceedings, stating as follows:

As set forth below, Defendant respectfully moves this Court for an Order dismissing Plaintiff's claims against it, as well as Plaintiff's class claims, based on the valid and binding agreement to arbitrate and class action waiver. In the alternative, Defendant respectfully requests that this Court compel Plaintiff to submit his individual claims against Defendant to arbitration and stay all judicial proceedings against Defendant pending the outcome of such arbitration.

## I.     INTRODUCTION

In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the U.S. Supreme Court reaffirmed the strong policy favoring enforcement of private agreements to arbitrate disputes, as reflected in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"). That policy applies here, as the Plaintiff Keith Hobbs ("Plaintiff") agreed to a broad arbitration provision, whereby any claims against Apollo would be resolved through binding, individual (non-class action) arbitration.

Plaintiff's claims are subject to the broad arbitration agreement, because they are based on alleged contacts by Apollo arising from his consent to receive such contacts.  The arbitration agreement is valid and enforceable under Georgia law, as well as the FAA, which completely encompasses the claims at issue.  Accordingly, Defendant's Motion should be granted and the action dismissed.

## II.     STATEMENT OF FACTS

**A.     The Present Lawsuit**

On April 8, 2019, Plaintiff filed this putative class action lawsuit against Defendant asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  (Doc. 1.)  Plaintiff alleges that Defendant initiated telemarketing calls to Plaintiff's cellular telephone service without prior express written consent in violation of 47 C.F.R. § 64.1200(a)(2). (Doc 1 ¶ 55.)  Plaintiff also alleges that Defendant violated "the FCC's regulation implementing subsection

227(c) of the TCPA, which prohibits anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do want to receive calls made by or on behalf of such person or entity." (Doc 1 ¶ 63.)

**B.     Hobbs agreed to receive text messages by entering his personal information on Apollo's website.**

Apollo operates BestAutoInsurance.com, a website designed to provide consumers information about and quotes for auto insurance (the "Website"). (Declaration of Mike Ranshaw ("Ranshaw Decl."), attached hereto as Exhibit "1," ¶ 3.) Significantly, Apollo records the information a consumer enters on Apollo's website using a video system that shows, in real time, the cursor moving over the website and data as it is entered by consumers. (*Id.* ¶ 4.) Apollo also has access to the consumer's internet protocol (IP) address, which identifies information about the computer from which the consumer enters its information (*Id.* ¶ 5.) Based on the IP address, Apollo knows the consumer's general geographic location while data is being entered. (*Id.*)

On August 29, 2018, at 3:57 EST, Hobbs accessed BestAutoInsurance.com and entered his personal information, including details about his date of birth, car, insurance policy interests, educational background and employment status, phone

number, and address.[1] (*Id.* ¶ 6.) He accessed the Website from IP address 98.219.28.203, which is located in Georgia where he resides. (*Id.* ¶ 7; Doc. 1 ¶ 6.)

**C.     The Website's Arbitration Agreement and Class Action Waiver**

The BestAutoInsurance.com website provides consumers with automobile insurance quotes. (Ranshaw Decl. ¶ 3.) The Website contains the following statement:

> By clicking the submit button, I agree to receive communications via automatic telephone dialing system or by artificial/pre-recorded message, or by text message from multiple insurance companies or their agents, this website, and partner companies at the telephone number I have provided.  I understand that my consent is not required as a condition of purchasing any goods or services.  Insurance companies or their agents that receive a quote request from this website or its partners companies may confirm my information through the use of a consumer report, which may include my credit score and driving record.  I authorize and instruct this website and its partners companies to obtain a consumer report.  I acknowledge that I have read and understand all of the Privacy Policy of this website and agree to be bound by them.

(*Id.* ¶ 9, Ex. 9.)  After entering his personal information into the website form, Hobbs clicked the submit button, agreeing to those terms. (*Id.* ¶ 10.) The referenced Privacy Policy is included via a hyperlink on the Website's homepage.  (*Id.* ¶ 14, Ex. D.)

---

[1] Plaintiff Keith Hobbs has filed multiple TCPA lawsuits in several federal jurisdictions.  *See Keith Hobbs et al. v. Entrevoice Virtual Solutions, Inc. et al.,* in the District Court for the Middle District of Georgia, Case No. 4:18-cv-00247-CDL (filed Dec. 19, 2018).  *See also, Keith Hobbs et al v. Randall-Reilly LLC et al*, in the District Court for the Middle District of Georgia, Case Number: 4:19cv00009-CDL (filed Jan. 22, 2019); *Keith Hobbs v. Connect America.com, LLC*, in the District Court for the Eastern District of Pennsylvania, Case Number: 2:18cv768 (filed Feb. 20, 2018); *Keith Hobbs v. Medical Guardian LLC*, in the District Court for the Eastern District of Pennsylvania, Case Number: 2:17cv5462 (filed Dec. 5, 2017); *Keith Hobbs v. Gosmith Inc.*, in the District Court for the Northern District of California, Case Number: 5:17cv6776 (filed Nov. 25, 2017).

The Privacy Policy also includes the following statement: "By using this site, you acknowledge that you have read and agree to the Privacy Policy and Terms & Conditions."  (*Id.* ¶ 12, Ex. B.)  It also provides that the Privacy Policy is incorporated into, and part of, the Legal Info, which govern your use of the Site in general." (*Id.*)

The BestAutoInsurance.com website includes Terms & Conditions that govern its use, which are accessed via a hyperlink on the Website's homepage. (*Id.* ¶¶ 13-14, Exs. C, D.)  Indeed, the homepage of the Website provides that "[b]y using this site, you acknowledge that you have read and agree to the Privacy Policy and Terms & Conditions." (*Id.* ¶ 14, Ex. D.)  The Terms & Conditions contain a binding arbitration provision (the "Arbitration Agreement") and contains a Notice of Arbitration Agreement that provides as follows:

> **Notice of Arbitration Agreement:**   These Terms & Conditions contain an Arbitration Agreement that may impact Your rights to use the courts to resolve disputes.  Please carefully review the terms of the Arbitration Agreement below.  If You do not wish to be bound by the Arbitration Agreement, do not use the Services as defined herein.

(*Id.* ¶ 13, Ex. C.)  Additionally, the Terms & Conditions include a Notice of Class Action/Class Arbitration Waiver, which provides as follows:

> **Notice of Class Action/Class Arbitration Waiver** These Terms & Conditions include a waiver of Your right to proceed with class actions or class arbitrations.  Please carefully review Section XV(g) for details.  If You do not wish to waive rights to class-based relief, do not use the Service.

(*Id.*)  The Arbitration Agreement itself states as follows:

> **Arbitration.**  Any controversy or claim arising out of or relating to these Terms, or the breach thereof, or Your access to or use of the Services shall be resolved exclusively by arbitration administered by the American Arbitration Association ("AAA") and conducted before a single arbitrator pursuant to the applicable Rules and Procedures established by the AAA.  You further agree that (1) the arbitration will be held in Los Angeles, California; (2) the arbitrator shall apply the laws of the State of California, without regard to its conflict of law principles to the contrary; (3) You waive any right to proceed in arbitration on a class or representative basis; (4) arbitration can resolve only claims between You and Best Auto Insurance; (5) the arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated; and (6) all parts of this clause are severable, meaning that if any part is deemed unenforceable, the remainder of the clause will remain in effect and construed in accordance with its terms.

(*Id.*)  Moreover, the Terms & Conditions explicitly state, "**BY USING THE SITE, YOU ACCEPT AND AGREE TO THESE TERMS AS APPLIED TO YOUR USE OF THE SITE.**"  (*Id.*)

By this Motion, Apollo elects to proceed with mandatory binding arbitration of Plaintiff's claims on an individual, non-class basis.  Apollo respectfully submits that Plaintiff's claims against it must be dismissed because, if necessary, arbitration is the proper forum for all of the claims asserted pursuant to the valid and binding Arbitration Agreement.

### III.   ARGUMENT AND CITATION OF AUTHORITY

**A.   The Court should dismiss Hobbs's Complaint pursuant to the arbitration provision.**

The FAA provides that "[a] written provision in . . . a contract evidencing a

transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, (the "FAA") governs this dispute.  Here, the parties' relationship involves interstate commerce, as Plaintiff is a resident of Georgia and Apollo is a California entity, and it involves Plaintiff's use of Apollo's Website. (Ranshaw Decl. ¶ 2; Complaint ¶ 6.)

The FAA's purpose was "to reverse the longstanding judicial hostility toward arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). The FAA reflects "a liberal federal policy favoring arbitration agreements." *Hill v. Rent–A–Center, Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005). Further, the FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Shubert v. Scope Products, Inc*., No. 2:10-CV-00101-RWS, 2011 U.S. Dist. LEXIS 82063, at *3-4 (N.D. Ga. July 27, 2011) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

**B.**     **The Court Should Compel Arbitration**

The FAA requires the enforcement of valid arbitration agreements like the

one at hand. *See* 9 U.S.C. § 4. To determine whether to grant a motion to compel arbitration, "the Court must determine whether: (1) a valid written agreement to arbitrate exists between the Parties; (2) the arbitration agreement applies to the relevant claims, and (3) the party asserting the claims has failed or refused to arbitrate the claims." *Monsanto Co. v. Ga. Farm Servs., LLC*, Case No.: 1:09-CV-46 (WLS), 2012 U.S. Dist LEXIS 200867 at *5 (M.D. Ga. June 7, 2012) (*citing Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F.Supp.2d 1360, 1362 (N.D. Ga. 2002).) *See also Wallace v. Rick Case Auto, Inc*., 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013) (citation omitted). Moreover, courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, *Batiste v. Atlanta Gas Co.*, No. 1:15-CV-4144-ELR-JSA, 2016 U.S. Dist. LEXIS 90524 at *10 (N.D. Ga. Jun. 13, 2016); *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs.*, No. 13-60051, 2013 U.S. Dist. LEXIS 66741 at *6 (S.D. Fla. May 7, 2013) (*citing Shea v. BBVA Compass Bancshares, Inc.*, No. 12-23324, 2013 U.S. Dist. LEXIS 31906, at *2 n.3 (S.D. Fla. Mar. 7, 2013)).

    **1.**    **The Scope of the Arbitration Agreement is for the Arbitrator to Decide.**

Defendant alleges in his Complaint that he was not a customer and did not consent to receive telemarketing calls prior to the receipt of these calls. (Doc. 1 ¶ 39.) Moreover, even though Defendant has evidence of the entry of Plaintiff's

personal information into its website on August 29, 2018, Defendant understands that Plaintiff contends that he never visited its website and that a third-party entered his information on the website. Plaintiff's story, however, is not plausible. Apollo does not call consumers at random to enter their information into its website, nor does it pay third parties to do so. (*See* Ranshaw Decl. ¶ 15.) Doing so would be economically unfeasible for Apollo. (*Id.*) Apollo does not pay commissions to anyone to manually enter information directly into its website, either. (*Id.* ¶ 16.)

Nevertheless, the Arbitration Agreement makes clear that the question of arbitrability is itself subject to arbitration. (*See* Ranshaw Decl. ¶ 13, Ex. C.) Significantly, the agreement provides for arbitration to be "resolved exclusively by arbitration administered by the American Arbitration Association ('AAA') and conducted before a single arbitrator pursuant to the applicable Rules and Procedures established by the AAA." *Id.* Agreements such as these authorize the arbitrator to decide issues of arbitrability based on the arbitration forum's governing arbitration rules and have routinely been upheld under the doctrine announced in *First Options, Inc. v. Kaplan*, 514 U.S. 938 (1995).

In *First Options*, the Supreme Court explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943; *see also Scott v.*

*Prudential Securities, Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998) ("[T]he parties may choose to have arbitrators resolve even the question of arbitrability."), *overruled on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).  This principle flows "from the fact that arbitration is simply a matter of contract between the parties."  *Kaplan*, 514 U.S. at 943.  Thus, the Court held that where parties clearly agree to arbitrate issues of arbitrability, such issues should be reserved for the arbitrator.  *See id.*   Moreover, when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, such as the arbitral forum's rules, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.  *See Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).[2]  *See also Bibb Cty. Sch. Dist. v. Dallemand*, No. 5:16-CV549 (MTT), 2017 U.S. Dist. LEXIS 150747 at *6 n.2 (M.D. Ga. Sep. 18, 2017) (recognizing that parties may incorporate

---

[2] *See, e.g., U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1309 (11th Cir. 2014) ("Because the parties clearly and unmistakably incorporated the rules of the [American Arbitration] Association into their arbitration provisions, the district court erred when it refused to allow an arbitrator to decide whether their dispute is arbitrable under one of the parties' contracts."); *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 208 (2d Cir. 2005) (finding that "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 473 (1st Cir. 1989).

10

the AAA's Commercial Arbitration Rules into arbitration agreement to establish delegation clause).

Here, the Arbitration Agreement explicitly incorporates "the applicable Rules and Procedures established by the AAA." (Ranshaw Decl. ¶ 13, Ex. C.) Significantly, Rule 7 of the AAA Commercial Arbitration Rules regarding Jurisdiction provides, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See Commercial Arbitration Rules and Mediation Procedures,* Amended and Effective October 1, 2013, https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf (last visited July 30, 2019). *See also Terminix*, 432 F.3d at 1332 ("By incorporating the AAA Rules, including Rule 8 [regarding arbitrator's jurisdiction], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

Based on the specific incorporation of the AAA Rules and Procedures into the Arbitration Agreement, the arbitrator alone should have the power to rule on the arbitrability of the claims in this case.

### 2. A Valid Written Agreement to Arbitrate Exists

A valid, written agreement to arbitrate governs Plaintiff's use of the Website. The Court must look to ordinary contract principles in determining whether a party

is bound by the terms of a written arbitration agreement. *See First Options*, 514 U.S. at 944.

The homepage of the Website provides, "By using this site you acknowledge that you have read and agree to the Privacy Policy and Terms & Conditions." ((Ranshaw Decl. ¶ 14, Ex. D.)  Both the Privacy Policy and Terms & Conditions are accessible via hyperlinks that are in blue, a different color than most of the text on the homepage.  (*Id.*)  Furthermore, at the time Plaintiff submitted his information, he clicked on the Submit button, which included his acknowledgment that he read and understood the Privacy Policy and agreed to be bound by it.  (Ranshaw Decl. ¶¶ 9-10.)  The Privacy Policy itself provides, "By using this site, you acknowledge that you have read and agree to the Privacy Policy and Terms & Conditions."  (Ranshaw Decl. ¶ 12, Ex. B.)  Moreover, the Privacy Policy and the Terms & Conditions cross-reference each other.  (Ranshaw Decl. ¶¶ 12-13, Exs. B, C.)  The Privacy Policy also includes a hyperlink to the Terms & Conditions, which was in a different color text than most of the text in the Privacy Policy. (Ranshaw Decl. ¶ 12, 14, Ex. B.)  The Terms & Conditions made abundantly clear that arbitration was an essential term to that agreement, by separating out the Arbitration Agreement to make it easy to find in the Terms & Conditions.  Moreover, the very first section of the Terms & Conditions contains a Notice of Arbitration Agreement.  (Ranshaw Decl. ¶ 13, Ex. C.)  The Terms & Conditions further specify that "**BY USING THE SITE, YOU**

**ACCEPT AND AGREE TO THESE TERMS AS APPLIED TO YOUR USE OF THE SITE.**" (*Id.*)  Accordingly, Plaintiff had reasonable notice of the terms of the Arbitration Agreement.  *See, e.g., Temple v. Best Rate Holdings LLC*, 360 F.Supp.3d 1289, 1304-1305 (M.D. Fla. 2018) (arbitration agreement valid where plaintiff had reasonable notice of agreement through Terms and Conditions hyperlink).

Because Plaintiff utilized the Website to enter his personal information to obtain an automobile insurance quote, Plaintiff is unquestionably bound by the Arbitration Agreement.  Accordingly, a valid written agreement to arbitrate exists.

### 3. The Agreement Covers Plaintiff's Claims

Plaintiff's claims against Apollo fall within the substantive scope of the arbitration provisions of the Arbitration Agreement.  When determining the scope of an arbitration provision, a court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions.  *See U.S. Nutraceuticals, LLC*, 769 F.3d at 1311; *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987); *In re Tirex Int'l, Inc.*, 395 B.R. 182, 194 (Bankr. S.D. Fla. 2008).  Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

13

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted).

In construing arbitration clauses, courts have distinguished between "broad" clauses that purport to cover all disputes "arising out of" or "relating to" a contract, and "narrow" clauses that limit arbitration to specific types of disputes. *See, e.g.*, *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). If a court concludes that the arbitration provision before it is a "broad" one, then the presumption in favor of arbitrability applies with even greater force. *See AT&T Techs., Inc.*, 475 U.S. at 650. Arbitration agreements covering "any claim or controversy" have been held to cover a broad range of disputes. *See, e.g., Sanders v. Kave Enterprises, LLC*, No. 3:07-CV-123CDL, 2008 U.S. Dist. LEXIS 6835, at *4 (M.D. Ga. Jan. 30, 2008).

The Arbitration Agreement here requires arbitration of "Any controversy or claim arising out of or relating to these Terms, or the breach thereof, or Your access to or use of the Services . . . ."[3] (Ranshaw Decl. ¶ 13, Ex. C.) Plaintiff's statutory

---

[3] The Terms & Conditions defines "Services" as follows: "Via the Site, we provide a service by which consumers can apply to receive insurance or discount program quotations from our network

claim for violations of the TCPA arises from Apollo's alleged contacts with Plaintiff, which originated from the entry of Plaintiff's information on the Website. Therefore, this claim falls squarely within the broad scope of the Arbitration Agreement. *See, e.g., See Temple*, 360 F.Supp.3d at 1307 (compelling arbitration of TCPA claims where plaintiff received alleged contact from defendants as result of providing his information and assenting to agreement terms, which meant he agreed to share his information with lenders and agreed to be contacted by them); *Shea,* Case No. 1:12-cv-23324, 2013 U.S. Dist. LEXIS 31906 (compelling arbitration of TCPA claim involving plaintiff's account with defendant and parties' relationship as defined in relevant agreements). Plaintiff's claims likewise must be compelled to arbitration.

In sum, Plaintiff cannot show "with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650. Accordingly, Plaintiff's claims against Apollo are subject to arbitration.

### 4. **Plaintiff failed to seek arbitration**

Finally, Plaintiff failed to seek arbitration in connection with his claims. As the foregoing demonstrates, Plaintiff was subject to a valid and enforceable

---

of insurance agents, brokers, discount program representatives and other service providers (the 'Services')." (Ranshaw Decl. ¶ 13, Ex. C.)

arbitration agreement and is bound by its clear, unambiguous terms.[4]  Therefore, Defendant respectfully requests that this Court dismiss Plaintiff's claims and require him to submit any such claim to arbitration.

Accordingly, all of the prerequisites under the FAA for enforcement of arbitration agreements are satisfied in this case.  For these reasons, Defendant's Motion should be granted, and any issues relating to the arbitrability of claims should be reserved for the arbitrator.

### C.  The Court Should Dismiss Plaintiff's Claim Against Apollo and Plaintiff's Class Claims or, In the Alternative, Stay the Proceedings on His Individual Claims Pending Arbitration

This Court should not only compel the arbitration of Plaintiff's claims against Apollo, but it should also dismiss them.  Courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See, e.g., Batiste*, No. 1:15-CV-4144-ELR-JSA, 2016 U.S. Dist. LEXIS 90524 at *10.  "[T]here is authority from district courts in [the Eleventh Circuit] and other circuit courts of appeals which clearly supports a dismissal of an action when, due to an order compelling arbitration, there are no substantive claims left pending before the district court." *Halford v. Deer Valley Home Builders, Inc.*, No. 2:07-cv-180-ID-WO, 2007 U.S.

---

[4] Plaintiff has failed to pursue his claims in arbitration despite Defendant raising the applicability of the arbitration and class action waiver agreement in its Twenty-Second Defense in its Answer. (Doc. 8 at 5.)

16

Dist. LEXIS 30696, at *9 (M.D. Ala. Apr. 25, 2007) (citations omitted); *see also Simmons v. First Premier Bank, N.A.*, No. 5:17-CV-376 (CAR), 2018 U.S. Dist. LEXIS 41396 (M.D. Ga. Mar. 14, 2018) (granting motion to compel arbitration and dismissing case with prejudice); *Athon v. Direct Merchants Bank*, No. 5:06-cv-1(CAR), 2007 U.S. Dist. LEXIS 26841, at *16 (M.D. Ga. Apr. 11, 2007) (granting motion to compel arbitration and dismissing case with prejudice), *affirmed by* 251 Fed. Appx. 602 (11th Cir. 2007); *Gilchrist v. Citifinancial Services, Inc.*, No. 6:06-cv-1727-Orl-31KRS, 2007 U.S. Dist. LEXIS 102269 at *10 (M.D. Fla. Jan. 11, 2007) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (citation omitted), *report and recommendation adopted by* 2007 U.S. Dist. LEXIS 4043 (M.D. Fla. Jan. 19, 2007).  Indeed, "[w]here all of the issues raised in a complaint must be submitted to arbitration, courts have held that a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy." *Clayton v. Woodmen of the World Life Ins. Soc'y*, 981 F. Supp. 1447, 1451 (M.D. Ala. 1997) (citations omitted).

All of Plaintiff's individual claims against Apollo fall within the broad scope of the Arbitration Agreement.  Moreover, the Arbitration Agreement provides that Plaintiff cannot pursue a claim as a class action or class arbitration.  (Ranshaw Decl. ¶ 13, Ex. C.)  Nevertheless, Plaintiff has filed the present suit as a class action.  (*See*

Doc. 1 ¶¶ 41-52.)  As the Arbitration Agreement is a valid and binding agreement, the class action waiver contained therein is also enforceable against Plaintiff. Therefore, Plaintiff's class action claims are subject to dismissal as well.  *See, e.g., Cronin v. Portfolio Recovery Assocs., LLC*, 8:15-CV-00768-EAK-EAJ, 2016 U.S. Dist. LEXIS 57541 (M.D. Fla. Apr. 29, 2016) (granting renewed motion to compel arbitration and dismissing Plaintiff's class action claim).  Because none of Plaintiff's claims are left to be decided by this Court, the Court should compel Plaintiff's individual claim to arbitration and dismiss his class claims in accordance with the Arbitration Agreement.  In the alternative, the Court should stay all proceedings against Apollo pending arbitration of Plaintiff's individual claims.

## IV.   CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court compel Plaintiff to submit his individual claims against Defendant to arbitration, dismiss Plaintiff's class claims, and either dismiss Defendant or stay all judicial proceedings against Defendant pending the outcome of such arbitration.

Dated July 31, 2019.           Respectfully Submitted,

/s/ Michael P. Bruyere
Michael P. Bruyere
Ga. Bar No. 090101
Matthew N. Foree
Ga. Bar No. 268702
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339

Telephone: (770) 818-1435
mbruyere@fmglaw.com
mforee@fmglaw.com

Derek A. Newman,
*Admitted Pro Hac Vice*
Keith Scully
*Admitted Pro Hac Vice*
NEWMAN DU WORS LLP
2101 Fourth Ave., Suite 1500
Seattle, WA 98121
Telephone: (206) 274-2800
Facsimile: (206) 274-2801
dn@nemanlaw.com
keith@newmanlaw.com

*Counsel for Defendant Apollo Interactive, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the within and foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record:

Anthony L. Paronich, Esq.
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043

Kris Skaar
Justin T. Holcombe
Skaar & Feagle, LLP
133 Mirramont Lake Drive
Woodstock, GA 30189

James M. Feagle
Cliff R. Dorsen
Skaar & Feagle, LLP
2374 Main Street, Suite B
Tucker, GA 30084

Submitted this 31st day of July, 2019.

/s/Michael P. Bruyere
Michael P. Bruyere
Ga. Bar No. 090101

*Counsel for Defendant
Apollo Interactive, Inc.*